## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALCON VISION, LLC,<br><br>       Plaintiff-Counterclaim Defendant<br><br>       v.<br><br>ALLIED VISION GROUP, INC. and<br>NATIONAL LENS LLC,<br><br>       Defendants-Counterclaim Plaintiffs,<br><br>       v.<br><br>NOVARTIS AG and ALCON<br>LABORATORIES, INC.,<br><br>       Additional Counterclaim<br>       Defendants. | Misc. Case No. _____<br><br>Underlying Case in the U.S. District<br>Court for the Eastern District of New<br>York, Civil Action No. 1:18-cv-<br>02486-MKB-PK |

## NON-PARTY HAMMOND, KENNEDY, WHITNEY & COMPANY, INC.'S
## MOTION TO QUASH SUBPOENA

Dated: August 16, 2019

PHILLIPS NIZER LLP
Ilene Jaroslaw, Esq.
485 Lexington Avenue, 14th Floor
New York, New York 10017
Telephone: (212) 841-1343
Facsimile: (212) 262-5152
Email: IJaroslaw@PhilipsNizer.com

*Attorneys for Non-Party Hammond, Kennedy,
Whitney & Company, Inc.*

25632599

## INTRODUCTION

Hammond, Kennedy, Whitney & Company, Inc. ("HKW"), a non-party, moves under Rule 45 of the Federal Rules of Civil Procedure to quash a subpoena served upon it by plaintiff Alcon Vision, LLC ("Alcon") in Case No. 1:18-cv-02486-MKB-PK, Eastern District of New York (the "New York Litigation") on the basis that such subpoena is overly broad, oppressive, unduly burdensome, and intended to harass HKW.[1] As set forth in greater detail below, the subpoena is improper for the following reasons:

1.  The subpoena is overly broad and compliance would subject HKW to undue burdens and expenses;

2.  The subpoena requests information that is unrelated to the subject matter of the New York Litigation and is not reasonably calculated to lead to the discovery of relevant evidence; and

3.  The subpoena seeks the disclosure of commercially sensitive and confidential information, as well as information subject to written agreements or other obligations restricting its disclosure.

HKW's counsel has attempted to resolve this dispute with Alcon's counsel via teleconference, but the parties were unable to do so. As a result, HKW requests the Court quash the subpoena. In support of its Motion to Quash, HKW states as follows.

## RELEVANT BACKGROUND

### A.    The Parties.

Alcon is the plaintiff in the New York Litigation and, whether directly or indirectly

---

[1] A true and accurate copy of the subpoena is attached hereto as Exhibit A, while HKW's objections to the subpoena are attached as Exhibit B. A letter from Alcon's counsel describing offered modifications to the subpoena is attached as Exhibit C.

1

through its affiliates, is a manufacturer of soft contact lenses which it sells to distributors throughout the world.

Allied Vision Group, Inc. ("AVG") and National Lens LLC ("NL"), are the defendants in the New York Litigation and are primarily involved in the wholesale distribution of contact lenses within the United States.

HKW is a private equity firm whose principal place of business is located in Indianapolis, Indiana. (Declaration of Constantine J. Rakkou, attached hereto as Exhibit D, ¶ 1.) HKW maintains a small satellite office in New York City. (*Id.*) HKW is not a manufacturer, importer, or seller of contact lenses. Further, it is *not* a party to the New York Litigation which is between Alcon, on the one hand, and AVG and NL, on the other hand.

**B.    The New York Litigation.**

Alcon has brought various claims against AVG and NL in the New York Litigation regarding their sale of genuine Alcon-branded contact lenses in the United States that were sourced from Alcon distributors outside of the United States—a practice commonly referred to as "gray market" selling. Alcon claims that these contact lenses are materially different than those Alcon has "authorized" for sale in the United States. Its claims are limited to four Alcon-branded soft contact lens lines: Dailies AquaComfort Plus; Air Optix plus HydraGlyde; O2 Optix, and Freshlook Colorblends. AVG and NL deny liability and specifically deny that any differences between their inventory of genuine Alcon-branded contact lenses and those sold by Alcon are material to consumers. AVG and NL have also filed counterclaims against Alcon based upon its misleading advertising, predatory litigation tactics, and monopolistic activities. AVG and NL's counterclaims allege that Alcon violated federal anti-trust law, among other claims.

C.      **The Florida Litigation.**

Alcon has also brought claims against AVG and NL in the U.S. District Court for the Southern District of Florida (the "Florida Litigation"). Alcon's claims in the Florida Litigation are separate and distinct from those in the New York Litigation, and relate to different products and theories of alleged liability. Alcon previously issued a subpoena to HKW in the Florida Litigation, which HKW moved to quash in this Court, where it was assigned Case No. 1:19-mc-00078-KPF. That motion was resolved after AVG and NL moved separately for a protective order in the Florida court, which the Florida court granted,[2] and Alcon agreed not to enforce the subpoena. HKW's present motion to quash relates only to the subpoena served in the New York Litigation and does not implicate the Florida Litigation.

D.      **The Subpoena.**

On July 12, 2019, Alcon served a third-party subpoena on HKW. (Rakkou Dec., ¶ 5.) The subpoena is dated July 11, 2019. The subpoena demands the production of virtually every document created or considered by HKW in connection with its purported investments in AVG and NL and the sale of contact lenses generally and is not limited to Alcon's claims in the New York Litigation. Further, Alcon commands the production of any records relating to defective or counterfeit contact lenses even though the subject of defective or counterfeit contact lenses is not implicated at all in the New York Litigation. Going one step further, in a stunningly broad demand that epitomizes the unrestrained overbreadth of the subpoena, Alcon demands any document relating to "Alcon." These requests are indefensible.

---

[2] *See* Subpoena issued to HKW in Case No. 0:18-cv-61638, U.S. District Court for the Southern District of Florida, attached as Exhibit E. At a hearing on AVG's and NL's motion for protective order regarding the subpoena, the court held that it would grant the motion. A copy of the confidential transcript can be provided under seal upon request.

The subpoena seeks the production of the following materials:

**Request No. 1:** All Documents referencing or concerning Hammond's investment in AVG, including all draft and final documents prepared by Hammond or AVG in furtherance of Your investment in AVG, including but not limited to: Securities Purchase Agreement, Agreement and Plan of Merger, Subscription Agreements, Rollover Agreements, Disclosure Schedules, Escrow Agreement, Support Agreements, Closing Certificates, Board Consents, Stockholders Consents, and Shareholders Agreement.

**Request No. 2:** All Documents referencing or concerning the source(s) of contact lenses sold by AVG.

**Request No. 3:** All Documents referencing or concerning AVG's compliance with FDA regulations in connection with the importation, shipment or sale of contact lenses in the gray market.

**Request No. 4:** All Documents and Communications referencing or concerning the risks associated with selling contact lenses.

**Request No. 5:** All Documents and Communications referencing or concerning the risks associated with selling in the United States contact lenses that were intended for sale outside of the United States.

**Request No. 6:** All Documents and Communications referencing or concerning the risks associated with selling defective contact lenses.

**Request No. 7:** All Documents and Communications referencing or concerning the risks associated with selling counterfeit contact lenses.

**Request No. 8:** All Documents and Communications mentioning or referencing Alcon or this Lawsuit.

Additionally, the subpoena defines HKW, AVG, and NL to include their "predecessors, subsidiaries, parents, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, and others acting" on their behalves. The subpoena contains similarly broad definitions for "documents" and "communications."[3]

---

[3] "Documents" is defined as "any kind of written, typewritten, photographic, or printed material whatsoever and any computer-readable material, including, without limitation, papers, agreements, contracts, notes, memoranda, correspondence, letters, telegrams, statements, personal diaries, records, books, maps, blueprints, forms, transcriptions and recordings, magnetic

4

E.       **Alcon Limits the Subpoena, but Fails to Address its Overbreadth and Irrelevance.**

After receipt of the subpoena, HKW's counsel objected[4] and counsel conferred by phone

in an effort to limit the scope of requested discovery. Alcon later amended its demands,[5] but did

not substantively address the substance of HKW's objections. For example, while Alcon limited

its demands to documents dated from January 1, 2015 to the present, and narrowed the specific

documents sought in Request No. 1, Alcon continues to dispute HKW's concerns as to relevance

an overbreadth. As such, HKW now moves to quash the subpoena.

## LAW AND ARGUMENT

A.       **The Subpoena Requests Information Unrelated to the New York Litigation.**

This Court should quash the subpoena because it requests information that is irrelevant

and wholly unrelated to the subject matter of the New York Litigation.

"Like discovery requests served on parties, subpoenas issued to non-parties pursuant to

Fed. R. Civ. P. 45 are subject to the relevance requirement of Rule 26(b)(1). . . . The party

issuing the subpoena bears the initial burden of showing that the discovery sought falls within

the scope of Rule 26(b)(1)." *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No.

16CV1318GBDBCM, 2018 WL 6712769, at *5 (S.D.N.Y. Nov. 30, 2018) (quotation omitted);

*see Malanga v. NYU Langone Med. Ctr.*, No. 14-cv-9681, 2016 WL 7477561, at *1 (S.D.N.Y.

Dec. 29, 2016) (quotation omitted) ("The reach of a subpoena is tempered by the relevancy

standard outlined [ ] in Rule 26(b)(1)"). As discovery under the Federal Rules is limited in scope

---

tapes, discs, and printed cards that are in Your possession, custody, or control."
"Communications" is defined as all "oral or written communications of any kind, such as
telephone conversations, discussions, meetings, notes, letters, negotiations, agreements,
contracts, electronic communications, facsimiles, or other forms of written or oral exchange by
words, thoughts, or ideas." Exhibit A, *Subpoena*, Definitions.

[4] *See* Ex. B, Objections.

[5] *See* Ex. C, Alcon letter.

to that which is "relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), the court

may quash or modify a subpoena that calls for irrelevant information. *GMA Accessories, Inc. v.*

*Elec. Wonderland, Inc.*, No. 07 CIV. 3219 PKC DF, 2012 WL 1933558, at *5 (S.D.N.Y. May

22, 2012).

Courts routinely quash subpoenas when the issuing party seeks irrelevant information

and, as a result, imposes an undue burden on the responding non-party. *See, e.g., Hermitage*

*Global Partners LP v. Prevezon Holdings Ltd.*, No. 14-mc-00318, 2015 WL 728463, at *3

(S.D.N.Y. Feb. 19, 2015) (quashing subpoena because "the subpoena's document requests are

extraordinarily broad" and the subpoenaed entity "has no connection to the civil forfeiture case,

or control over [the target entity's] relevant documents"); *GMA Accessories*, 2012 WL 1933558,

at *9 (quashing overly broad subpoena that sought irrelevant information); *Koch v. Greenberg*,

No. 07 CIV. 9600BSJDF, 2009 WL 2143634, at *4 (S.D.N.Y. July 14, 2009) (quashing

subpoena requests that sought irrelevant information); *accord Jt. Stock Co. Channel One Russia*

*Worldwide v. Infomir LLC*, No. 16-CV-1318, 2018 WL 6712769, at *5 (S.D.N.Y. Nov. 30,

2018) ("Like discovery requests served on parties, subpoenas issued to non-parties pursuant to

Fed. R. Civ. P. 45 are subject to the relevance requirement of Rule 26(b)(1).").

The subpoena requests the delivery of "Documents" and "Communications" which are

irrelevant and unrelated to the New York Litigation. That case relates to the sale by AVG and

NL of Alcon-manufactured contact lenses in the so-called gray market and whether that sale is

legally permissible. Nevertheless, the subpoena requests information that is not at all relevant to

this issue.

**Request No. 1.** The subpoena seeks "Documents" relating to HKW's purported

"investment in AVG," including all draft and final investment materials such as any Securities

Purchase Agreement, Agreement and Plan of Merger, Subscription Agreements, Rollover Agreements, Disclosure Schedules, Escrow Agreement, Support Agreements, Closing Certificates, Board Consents, Stockholders Consents, and Shareholders Agreement.[6] None of these documents are related to the New York Litigation, nor is their disclosure reasonably calculated to lead to the discovery of relevant information. The terms of any investment made in AVG, the deliberations of boards of directors and shareholders, the terms of investment escrows and the financial terms set forth in closing certificates are not only highly confidential to all the parties involved, but also wholly unrelated to whether AVG's sale of genuine, Alcon-manufactured contact lenses is lawful. This information is not only irrelevant, but the request appears calculated to harass HKW. *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 68 (1st Cir. 2003) (an appropriate factor to consider on a motion to quash is whether "the subpoena was issued primarily for purposes of harassment."). Additionally, many of these documents are either attorney-client or accountant-client privileged. *See, e.g.,* Fla. Stat. § 90.5055; I.C. § 25-2.1-14.1.

**Request No. 2:** The subpoena demands the production of documents concerning the "source(s) of contact lenses sold by AVG."[7] This request is facially overbroad and therefore irrelevant because it is not limited to Alcon-branded contact lenses, let alone the four product lines at issue. As written, HKW would be required to produce documents relating to any manufacturer's contact lenses – including manufactures not party to the New York Litigation and whose contact lenses are not at issue. Further, the *source* of AVG's contact lenses is not at issue in the New York Litigation—the lenses are genuine, gray good products manufactured by Alcon. This request is simply designed to provide Alcon with impermissible insight into AVG's confidential supply chain rather than to obtain information that is relevant to the claims at issue.

---

[6] Exhibit A, *Subpoena*, Request No. 1.
[7] Exhibit A, *Subpoena,* Request No. 2.

**Request No. 3:** The subpoena requests the production of "Documents referencing or concerning AVG's compliance with FDA regulations in connection with the importation, shipment or sale of contact lenses in the gray market."[8] Again, this request is not limited to Alcon manufactured or branded contact lenses. AVG's compliance with FDA regulations as they relate to non-Alcon contact lenses is wholly irrelevant to whether the four Alcon product lines sold by AVG and NL are materially different than those "authorized" by Alcon for resale. Further, even if AVG's compliance with FDA regulations relative to Alcon were relevant to the New York Litigation, this information is already the subject of requests made on AVG and NL and is not appropriately requested of a third-party such as HKW. *Vangelakos v. Wells Fargo Bank, NA.*, No. 13-CV-6574 (PKC), 2014 WL 12772257, at *1 (S.D.N.Y. June 26, 2014) ("A court may limit 'the frequency or extent of discovery' if 'the party seeking discovery has ample opportunity to obtain the information by discovery in the action[.]'")

**Request Nos. 4 and 5:** The subpoena requires the production of documents relating to "the risks associated with selling contact lenses"[9] generally, as well as "the risks associated with selling in the United States contact lenses that were intended for sale outside of the United States."[10] Again, this request is not limited to Alcon-branded contact lenses and no other manufacturer of contact lenses has been implicated in the New York Litigation. Further, the risks associated with selling contact lenses are not at issue in the case—the issues relate to whether the genuine lenses sold by AVG and NL differ materially from those "authorized" for sale, and whether Alcon's tactics are anti-competitive. Even if it were at issue, the "risks associated" with selling contact lenses is far too broad and would require the production of documents not at all

---

[8] Exhibit A, *Subpoena*, Request No. 3.
[9] Exhibit A, *Subpoena*, Request No. 4.
[10] Exhibit A, *Subpoena*, Request No. 5.

relevant to the New York Litigation. For example, there are many risks relating to the sale of contact lenses – or any product for that matter – which have nothing to do with this case. For example, the state and future of the global economy and the U.S. economy are risks. Changes in interest rates, availability of debt and equity capital and changes in credit and equity markets are risks that bear on the business of selling contact lenses. Consumer demand, and alternatives to contact lens wearing, such as LASIK, are risks. None of these risks, or the many other risks, involved in selling contact lenses is at all relevant to the New York Litigation.

**Request Nos. 6 and 7:** The subpoena seeks production of documents concerning "the risks associated with selling defective contact lenses"[11] and "the risks associated with selling counterfeit contact lenses."[12] Again, these requests are not limited to Alcon-branded contact lenses, which are the only contact lenses at issue in the New York Litigation. Further, there have been no allegations in the New York Litigation that AVG or NL have sold defective or counterfeit contact lenses. Rather, Alcon's claims in the New York Litigation are limited to whether Defendants' sales of genuine, non-defective Alcon contact lenses are lawful. Additionally, the request is not limited to the four product lines in question, which are the only contact lenses implicated by Alcon's claims. Accordingly, these requests seek information that is not at all related to the subject matter of the New York Litigation.

**Request No. 8:** Finally, the subpoena requests production of all documents "mentioning or referencing Alcon or this Lawsuit."[13] It is hard to conceive of a more overly broad request. HKW may have various documents that mention Alcon that are wholly unrelated to the New York Litigation. Alcon cannot employ third-party discovery to obtain wholesale discovery of all

---

[11] Exhibit A, *Subpoena*, Request No. 7.
[12] Exhibit A, *Subpoena*, Request No. 8.
[13] Exhibit A, *Subpoena*, Request No. 6.

documents mentioning it. Further, references to the New York Litigation in board and similar communications are not relevant to this case and may very well be subject to privilege (including attorney-client privilege and accounting privilege in connection with disclosures made in connection with the preparation of financial statements and audits).

For the reasons set forth above, the subpoena requests documents and communications that are wholly irrelevant to the New York Litigation. The Court should quash the subpoena as a result.

**B.     The Subpoena is Overly Broad and Subjects HKW to an Undue Burden.**

This Court should quash the subpoena because it is overly broad in its request for documents and because it would be unduly burdensome for HKW to comply with its terms. Subpoenas that are overly broad in their requests for production and that place an undue burden on the recipient are improper. Fed. R. Civ. P. 45(d)(1) (party issuing a subpoena must take reasonable steps to avoid imposing an undue burden or expense on the recipient);*Vangelakos*, 2014 WL 12772257, at *1. "On timely motion, the court for the district where compliance is required must quash or modify a subpoena that … subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

In determining whether compliance with a subpoena creates an undue burden, the Court must consider whether the recipient is a party to the subject matter litigation – litigants may be subjected to higher burdens than non-parties. *See Copantitla v. Fiskardo Estiatorio, Inc.*, No. 09 CIV. 1608 RJH JCF, 2010 WL 1327921, at *10 (S.D.N.Y. Apr. 5, 2010) ("special weight [should be given] to the burden on non-parties of producing documents to parties involved in litigation.") Non-parties, like HKW, are not subject to the same burden of production that apply to parties. *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 49 (S.D.N.Y.1996) ("[T]he

status of a witness as a nonparty to the underlying litigation 'entitles [the witness] to consideration regarding expense and inconvenience'" (alteration in original)); Fed. R. Civ. P. 45 advisory committee's note ("A non-party required to produce documents or material is protected against significant expense resulting from involuntary assistance to the court.").

Here, producing the requested documents would subject HKW to an undue burden and expense, such that the subpoena should be quashed. The subpoena has been drafted in the most aggressive and overly broad manner possible. It seeks documents regarding myriad matters, most of which are wholly unrelated to the subject matter of the New York Litigation. Complying with the subpoena as written would be exceptionally time consuming, expensive, and disruptive to HKW for numerous reasons.

First, the Subpoena requests documents about HKW, AVG, NL and all of their respective "predecessors, subsidiaries, parents, and affiliates and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, and others" acting on their behalves.[14] As a private equity firm, HKW currently sponsors, and has previously sponsored, many private equity funds and is affiliated with various management companies that provide various services to those private equity funds. (*See* Rakkou Dec., ¶ 3.) Further, those private equity funds have various general and limited partners, including institutional investors. (*Id*.) All of them have directors, officers, agents, representatives, employees, consultants and attorneys. Complying with a requested production of documents relating to all of these entities—let alone their *past* officers and directors—and associated individuals is patently unreasonable, would be exceptionally time consuming (to the detriment of HKW's ability to continue its operations without significant interruption) and expensive. Further, these requests, to the extent they seek

---

[14] *See* Exhibit A, *Subpoena*, Definitions B and C.

11

documents between HKW and its counsel, are subject to privilege and therefore are not discoverable. HKW frequently retains outside counsel to facilitate its operations and investments, such that much of the requested discovery touches upon attorney-client privileged and work product materials. (*Id.*)

Second, the subpoena requests documents that Alcon can request from the parties to the New York Litigation. As this District recognizes, "[a] court may limit 'the frequency or extent of discovery' if 'the party seeking discovery has ample opportunity to obtain the information by discovery in the action[.]'" *Vangelakos*, 2014 WL 12772257, at *1 (quoting Fed. R. Civ. P. 26(b)(2)(C)(ii)); *see Ameritox, Ltd. v. Millennium Labs, Inc.*, No. 12-cv-7493, 2012 WL 6568226, at *2-3 (N.D. Ill. Dec. 14, 2012) (granting a motion to quash nonparty subpoenas "because the requests are cumulative and duplicative of discovery requests made to the party to the litigation"). Alcon has ample opportunity to seek the requested documents directly from AVG and NL, rather from HKW, a non-party. Requiring HKW to search for and produce documents, rather than pursuing the documents through party discovery, imposes an undue burden on HKW.

Third, the subpoena requests the delivery of "Documents" and "Communications" which are defined so broadly as to impose a substantial burden on HKW if it were required to comply. Specifically, the subpoena defines "Documents" as "any kind of typewritten, photographic, or printed material whatsoever and any computer-readable material, including, without limitation, papers, agreements, contracts, notes, memoranda, correspondence, letters, telegrams, statements, personal diaries, records, books, maps, blueprints, forms, transcriptions and recordings, magnetic tapes, discs, and printed cards . . . ." Further, the subpoena defines "Communications" as "oral or written communications of any kind, such as telephone conversations, discussions, meetings,

12

notes, letters, negotiations, agreements, contracts, electronic communications, facsimiles, or other forms of written or oral exchange by words, thoughts or ideas."

These definitions not only exceed the limits imposed by the Eastern District,[15] but compliance would impose an undue burden on HKW. HKW does not have significant staff who can be re-tasked to search for the voluminous Documents and Correspondence, as defined in the subpoena, without a risk of disruption to its business. (Rakkou Decl., ¶¶ 3, 9.) Further, to obtain all Documents and Communications, as defined, HKW would be required to search physical records at each of its, AVG's and NL's business locations, inquire of custodians who hold various information on HKW's behalf and engage a third-party information technology service provider to assist it in obtaining responsive electronic records. HKW does not have the ability to effectively search archived and non-archived files of HKW, AVG, and NL for responsive materials without the assistance of a third-party service provider. (*Id.*, ¶¶ 6-9.)

Even if the requested Documents and Communications were obtained, HKW would have to (or would be required to engage third parties, such as counsel) to determine which inquiries are subject to attorney-client, attorney work product, accountant-client, or other privileges, object to the production of those specific documents or otherwise redact sensitive information. HKW maintains a great deal of information subject to confidentiality agreements in favor of third parties. (*Id.*, ¶ 11.) Before production, HKW would be required to (or to engage counsel to) review all applicable non-disclosure agreements and determine what information is and is not

---

[15] The Eastern District of New York's local rules limit the definition of "communication" to "the transmittal of information (in the form of facts, ideas, inquiries or otherwise)." "Document" is defined "to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term." The local rules state that these definitions apply to all discovery requests. *See* Local Rules of the U.S. District Court for the Eastern District of New York, https://img.nyed.uscourts.gov/files/local_rules/localrules.pdf, p. 33.

subject to limitations on disclosure. Many of these non-disclosure agreements impose duties on HKW to notify third parties of requested production and to cooperate in obtaining protective orders on behalf of third parties with respect to confidential information. (*Id.*) As set forth above, HKW does not have the bandwidth to undertake this activity and would incur substantial and unreasonable expenses in retaining third parties to assemble and review this information on its behalf. The cost to HKW of compliance would be substantial and is unreasonable, particularly given that HKW is not a party to the New York Litigation.

Accordingly, the subpoena is overly broad and HKW, as a non-party, would be subjected to unreasonable burden and expense if it were required to comply with the subpoena. The Court should quash the subpoena on this ground.

**C.     The Subpoena Seeks Information that is Confidential and Proprietary, and Otherwise subject to Limitations on Disclosure.**

Due to HKW's participation in the numerous funds it sponsors, HKW is subject to certain contractual restrictions on the disclosure of confidential information relating to HKW and certain of its affiliates. These contractual restrictions place limitations on HKW's ability to disclose certain of the information requested by the subpoena. At a minimum, HKW may be required to gather potentially responsive documents and submit them for review by HKW's affiliates for privilege, confidentiality, and other protections to prevent a breach of applicable confidentiality provisions. (Rakkou Decl., ¶¶ 8, 10-12.) Additionally, HKW considers much of the requested information—such as its investment strategies and transactional documentation—to be highly confidential because it is proprietary and has commercial value critical to HKW's business. (*Id*., ¶ 10.) Requiring HKW to produce this information, when it has no bearing on the New York Litigation, is not only prejudicial but damaging to HKW's standing in the market. The subpoena should be quashed.

**D.     If HKW is Required to Respond to the Subpoena, HKW Should Have a Reasonable Amount of Time to Respond and Alcon Should Have to Pay the Reasonable Costs of HKW's Compliance.**

Alcon's subpoena should be quashed. However, if the Court directs HKW to produce documents in response to the subpoena, the Court should allow HKW a reasonable amount of time to comply, not less than two weeks from the date this Motion is resolved. Further, the Court should order Alcon to reimburse HKW for its reasonable costs to comply, including payment for its (or his representatives') time spent reviewing and gathering documents and screening for confidential or privileged matters, at reasonable hourly rates. Fed. R. Civ. P. 45(d)(3)(C)(ii); *Spears v. City of Indianapolis*, 74 F.3d 153, 158 (7th Cir. 1996) ("[Trial courts have considerable discretion in determining whether expense-shifting in discovery production is appropriate in a

15

given case."); *Guy Chem. Co., Inc. v. Romaco AG*, 243 F.R.D. 310, 313 (N.D. Ind. 2007); *see also* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2459 (3d ed. 2014). Without knowing the scope of its required response, if any, it is impossible for HKW to predict accurately exactly how much time and expense will be necessary to respond to the subpoena

## CONCLUSION

HKW is not a party to the New York Litigation. Nevertheless, Alcon has served it with a subpoena for the production of documents in connection with this matter. While many third-party subpoenas serve meaningful purpose in the disposition of litigation, the subpoena at issue does not. Alcon did not issue a subpoena to HKW to obtain documents relevant to its case. Rather, it issued the subpoena as a means of harassing HKW and placing an unreasonable financial and business burden upon it, to the detriment of HKW, AVG, and NL. Alcon views HKW as the purported owner of the defendants in the New York Litigation, and is seeking to gain an impermissible advantage by harming HKW, AVG, and NL by diverting HKW's attention from the New York Litigation to unnecessary and voluminous discovery.

The subpoena is improper for many reasons. First, its requests are overly broad and place undue financial and other burdens on HKW as a non-party in this case. Second, its requests seek information that is wholly irrelevant to this case and are intended to result in the production of confidential and commercially sensitive information that would only serve to harm HKW, AVG, and NL. Finally, the subpoena requests confidential and proprietary information that is subject to restrictions on disclosure.

For all of the foregoing reasons, this Court should quash the subpoena.

16

Dated: August 16, 2019                        PHILLIPS NIZER LLP


By: _s/ Ilene Jaroslaw_____
Ilene Jaroslaw, Esq.
485 Lexington Avenue, 14th Floor
New York, New York 10017
Telephone: (212) 841-1343
Facsimile: (212) 262-5152
Email: IJaroslaw@PhilipsNizer.com

*Attorneys for Non-Party Hammond, Kennedy,*
*Whitney & Company, Inc.*

17