## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

ALCON VISION, LLC,

           Plaintiff-Counterclaim Defendant,

    v.

ALLIED VISION GROUP, INC. and NATIONAL LENS LLC,

           Defendants-Counterclaim Plaintiffs,

    v.

NOVARTIS AG.

           Additional Counterclaim Defendant.

Case No. 1:19-mc-00384

Underlying Case in the U.S. District Court for the Eastern District of New York, Civil Action No. 1:18-cv-02486-MKB-PK

## PLAINTIFF ALCON VISION, LLC'S OPPOSITION TO HAMMOND, KENNEDY, WHITNEY & COMPANY, INC.'S MOTION TO QUASH SUBPOENA

MORRISON & FOERSTER LLP
Jennifer Lee Taylor (*Pro Hac Vice* forthcoming)
Sabrina A. Larson (*Pro Hac Vice* forthcoming)
425 Market Street
San Francisco, California 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
Email: JTaylor@mofo.com
SLarson@mofo.com

Jamie A. Levitt
Sarah L. Prutzman
Janie C. Buckley
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Email: JLevitt@mofo.com
SPrutzman@mofo.com
JBuckley@mofo.com

Alcon Vision, LLC hereby opposes Hammond, Kennedy, Whitney & Company, Inc.'s Motion to Quash.  (ECF No. 3 ("Mot.").)  The motion should be denied because HKW possesses highly relevant information and the subpoena does not impose an undue burden.[1]

## I.     BACKGROUND

### Alcon

Alcon is a global leader in the development, manufacture, and sale of innovative eye care products, including surgical equipment, soft contact lenses, and ophthalmic drops and ointments. It sells over 20 varieties of soft contact lenses under several brand names.  Soft contact lenses are Class II or Class III medical devices regulated by the FDA to ensure safety and efficacy.  (*See* Declaration of Jennifer Lee Taylor ("Taylor Decl."), Ex. 1 (Complaint) ¶¶ 24-26.)  Alcon vigorously protects its reputation and goodwill by maintaining the highest standards in its products.  (*Id.* ¶ 12.)  Contact lens consumers expect a high level of quality from Alcon, due in large part to the precise and technologically advanced manner in which Alcon manufactures, packages, distributes, and markets its lenses.  (*Id.* ¶¶ 10-12.)

### Defendants

In April 2018, Alcon brought suit against Allied Vision Group, Inc. and National Lens LLC ("Defendants") for trademark infringement, *inter alia*, in the U.S. District Court for the Eastern District of New York, Civil Action No. 1:18-cv-02486-MKB-PK (the "Underlying Action").  That Complaint alleges that Defendants import and sell Alcon contact lenses that are not intended to be sold in the U.S., may not be compliant with U.S. Food and Drug Administration ("FDA") standards or even be authentic, and that lack Alcon's safety and usage information for U.S. consumers.  (*Id.* ¶¶ 77-98.)  In fact, Defendants sold *counterfeit* Alcon

---

[1] During the meet and confer process, Alcon agreed to extend the deadline for HKW's subpoena response to August 16, 2019 to allow sufficient time to meet and confer.  Alcon does not oppose the motion on the basis it is untimely.

lenses in spring and summer 2018, which are the subject of a case that is currently pending in the U.S. District Court for the District of Southern Florida, Civil Action No. 0:18-cv-61638-RKA (the "Florida Litigation"). Alcon's claims in the Underlying Action relate to its DAILIES AQUACOMFORT PLUS®, O2 OPTIX®, AIR OPTIX® plus HYDRAGLYDE®, FRESHLOOK® COLORBLENDS®, and AIR OPTIX COLORS® spherical lens products. (*Id.* ¶¶ 28-45, Prayer for Relief at 41-43.)

Defendants filed antitrust counterclaims against Alcon in the Underlying Action, alleging that Alcon has colluded with others to prevent Defendants from competing in the contact lens market in general, as well as in an Alcon-specific market, due to certain steps Alcon took to stop the sale of materially different gray market contact lenses to U.S. consumers and to enforce exclusive distribution agreements to ensure transparent distribution channels for Alcon contact lenses. (*Id.*, Ex. 2 (First Amended Answer and Counterclaims) ¶¶ 226-315.) The Counterclaims are not limited to specific Alcon products. (*Id.*)

### Hammond, Kennedy, Whitney & Company, Inc.

In September 2017, HKW acquired Defendants through a leveraged buyout. (*See* Taylor Decl. Ex. 4.) At the time of the acquisition, Defendants claimed to have found "the right partner in HKW," viewing HKW as "the best firm to take us to the next level of growth, with more than a century of excellence and significant healthcare expertise." (*See* Taylor Decl. Ex. 5.) HKW also views its relationship with Defendants as a *partnership*: "While many competitors preach a partnership model with their portfolio companies, we believe we are effective in putting that idea into practice. We strive to give our management teams the autonomy to succeed combined with the full operational support of our team." In fact, Jeff Wood, who is a Senior Partner at HKW, is Defendants' Chairman. (*See* Taylor Decl. Ex. 6.)

HKW is *not* a passive owner.  Jeff Wood himself prepares agendas for Defendants' Board meetings.  (*See* Taylor Decl. Ex. 7.)  And he included ███████████████ among items on the agenda for a ████████████████████—shortly after HKW acquired Defendants. (*Id.*)  This is no doubt a reference to ███████████████████████████████ ███████████████████████████████ (*See* Taylor Decl. Ex. 1 ¶ 28), when HKW was conducting due diligence on Defendants and their business.  Mr. Wood would not have known to add██████████████████████████████ ███████████████████████████████████ ████████████.  Further, as Defendants' Chairman, Mr. Wood uses ███████████ ███████ and signs his emails as █████████████████████████████. Taylor Decl. Ex. 7.)  Thus, contrary to HKW's suggestion (Mot. at 2, 16),[2] it is *not* uninvolved in Defendants or the Underlying Action.

## II.   THE SUBPOENA

On July 12, 2019, Alcon served a subpoena on HKW seeking documents that bear directly on Defendants' defenses and counterclaims in the Underlying Action—most notably, on Defendants' claims that they have no knowledge of risks associated with their purchase and sale of gray market lenses and that they are being harmed by Alcon's efforts to stop the sale of gray market Alcon lenses[3]—and Alcon's allegation that Defendants acted willfully.  (ECF No. 3-1

---

[2]  Strikingly, although HKW *could* offer evidence of its relationship with Defendants, it does not.  Instead, it insinuates, alleging that "*Alcon* views HKW as the *purported* owner of the defendants in the New York Litigation." (Mot. at 16 (emphasis added).  HKW's failure to deny that it owns Defendants is deafening, particularly because it simultaneously complains that Alcon "is seeking to gain an impermissible advantage … by diverting *HKW's* attention from the New York Litigation to unnecessary and voluminous discovery." (*Id.* (emphasis added).)

[3]  (Taylor Decl. Ex. 1 at 16 (Fourth affirmative defense: Alcon's harm is not irreparable), at 15 (Sixth affirmative defense: AVG's infringement is "innocent"), ¶ 127 ("there is no evidence of patient-consumer harm flowing from the sales of contact lenses through channels other than ECPs"), ¶¶ 262, 272 ("Counterclaimants have been foreclosed from a substantial portion of the relevant market and patient-consumers and competition has, and continues to be, harmed."), ¶ 283 ("Alcon used its dominant position in the Alcon Market to strengthen its position, to harm competition, and to unreasonably deprive other suppliers of access to the relevant market for Alcon's

at 7-8.)  Because HKW acquired Defendants shortly prior to the filing of the Complaint in the Underlying Action, communications between HKW and Defendants are likely to be directly relevant to these issues.  To address Defendants' burden and breadth concerns, Alcon agreed to limit the timeframe for its requests to January 1, 2015 to the present.  (Taylor Decl. Ex. 8 at 2.)

### III.   APPLICABLE LEGAL STANDARDS

Rule 45(a)(1) allows a party to serve a subpoena on a non-party for the production of documents.  *See* Fed. R. Civ. P. 45(a)(1).  A subpoena may be quashed or modified if it "(i) fails to allow a reasonable time to comply, (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."  *Id.* at 45(d)(3)(A)(i)- (iv).  "Whether a subpoena imposes an undue burden depends upon such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Griffith v. United States*, 2007 U.S. Dist. LEXIS 36672 (S.D.N.Y. April 24, 2007). "Inconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant testimony."  *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*, 262 F.R.D. 293, 294 (S.D.N.Y. 2009).  The relevance parameters set out in Rule 26 apply to third-party subpoenas. *See Citizens Union of New York v. AG of New York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017).

### IV.   ARGUMENT

Because HKW possesses information relevant to the parties' claims and defenses in the Underlying Action and compliance is not unduly burdensome, its motion should be denied.

---

contact lenses."), ¶¶ 337, 354 ("As a direct and proximate result of Alcon's and Novartis' materially false and deceptive conduct, Counterclaimants suffered and will continue to suffer harm to their sales and goodwill.").)

A.      **HKW POSSESSES RELEVANT INFORMATION**

Alcon seeks two general categories of information: (1) Defendants' representations to HKW, which will bear on Defendants' knowledge of the risks that exist in buying and selling gray market, including risks to Defendants' business from Alcon's enforcement activities; and (2) any independent knowledge that HKW possesses of those risks, either before or after HKW acquired Defendants.  HKW is likely to have such information.  Prior to the acquisition, it would have done due diligence on Defendants, including an assessment of risk they faced, such as the risk of buying and selling products from the gray market, including counterfeit products, and the risk that Alcon and other manufacturers would take steps to stop the sale of gray market products.  Moreover, Defendants presumably made, as all acquisition targets do, representations and warranties to HKW regarding their business and the risks they face.  HKW likely also held back a portion of the purchase price based upon its assessment of the risks associated with Defendants' business.

**Request No. 1**

Alcon made substantial concessions on this request during the meet and confer process, which HKW *fails* to mention.  Specifically, Alcon narrowed this request to the Securities Purchase Agreement, Disclosure Schedules to that agreement, and the Escrow Agreement involved in HKW's acquisition of Defendants so long as these documents disclose all representations and warranties made by Defendants or any officers, directors, or employees of Defendants to HKW regarding Defendants' business, all exceptions to such representations and warranties, and all indemnification agreements between Defendants or any officers, directors, or employees of Defendants and HKW in connection with HKW's investment in Defendants. These documents will likely contain (among other relevant items) representations made by Defendants to HKW about their business; indemnification terms; and financial arrangements

that bear on future compensation Defendants may receive depending on the outcome of this action, i.e., a hold back, and are thus relevant. (*See* Taylor Decl. Ex. 7.)[4]

**Request Nos. 2-7**

These requests are very likely to yield documents that bear on, among other things, the risks associated with buying contact lenses in the gray market, the risk to Defendants' business from Alcon's enforcement efforts, Defendants' knowledge of the risks associated with their activities in the gray market, representations Defendants made to HKW regarding those risks, and HKW's independent knowledge of such risks, including knowledge it obtained from its own due diligence.  (*See* Taylor Decl. Ex. 7.)  HKW's knowledge on these issues is directly relevant to the Underlying Action because of Mr. Wood's dual role as both a Senior Partner in HKW and Defendants' Chairman.  These requests are also directly relevant to establishing Defendants' willful and reckless disregard for public safety to the extent that HKW learned of risks associated with buying and selling gray market lenses but failed to cause Defendants to modify their business operations in any fashion after HKW acquired Defendants.  (*See* Taylor Decl. Ex. 7.)

In terms of products, the scope of discovery needs to match the scope of Defendants' defenses and counterclaims.  Because (i) the risks related to the purchase and sale of gray market contact lens are not product-specific, (ii) Defendants claim their counterclaims are not limited to specific Alcon products, and (iii) Defendants have denied knowledge of any risks associated with the buying and selling of contact lenses in the gray market, the subpoenas cannot be artificially limited to the products specifically identified in Alcon's claims.  (*See* Taylor Decl. Ex. 1 ¶ 90; *id*. Ex. 2 ¶ 90.)  Alcon is entitled to discovery that is sufficiently broad

---

[4] Because this is *substantially* narrower than what Mr. Rakkou discusses in his declaration to support HKW's claim that the subpoena poses an undue burden, much of his declaration is irrelevant and should be disregarded.  (*See* ECF No. 3-4, ¶¶ 6-8.)

to enable it to respond to any general denials or claims that Defendants may present in the case, and to establish that Defendants acted willfully or with reckless disregard in operating their business. Likewise, to the extent Defendants claim they comply with FDA regulations, Alcon is entitled to test that assertion as to all lenses.

**Request No. 8**

This request seeks documents "mentioning or referencing Alcon or this Lawsuit." HKW's attorneys, who also represent Defendants in the Underlying Action, are well aware that Judge Kuo reminded the parties on August 6, 2019 that a "blanket characterization" of attorney-client privilege requires further explanation, particularly as to communications between non-attorneys.[5] Yet, HKW's motion provides no explanation for its blanket claims.[6] (Mot. at 8, 12.)

### B.    BURDEN DOES NOT WARRANT QUASHING THE SUBPOENA

As the party moving to quash, HKW bears the burden show that the subpoena subjects it to undue burden. *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 45 (S.D.N.Y. 1996). "Whether a subpoena subjects a witness to undue burden within the meaning of Fed. R. Civ. P. 45(c)(3)(A)(iv) usually raises a question of the reasonableness of the subpoena." *Aristocrat Leisure*, 262 F.R.D. at 294. HKW claims that it would be inconvenienced if it complied with the subpoena, but inconvenience does *not* excuse compliance. *Id.* HKW has *not* shown that the burden associated with complying with the subpoena warrants quashing it—especially when HKW's ownership and control of Defendants is considered, *supra* Section I.

---

[5] (Taylor Decl. Ex. 3 at 109.)

[6] HKW similarly provides no explanation for its conclusory claims of accountant-client privilege. This is not sufficient even under Florida law. *See Bild v. Konig*, 2012 WL 13109963, at *1 n.2 (E.D.N.Y. Jan. 20, 2012) (Under Florida law, "[t]he [accountant-client] privilege protects *only* communications between the client and the accountant; *it does not protect financial records and other such documents provided by a client to an accountant*. Thus, to the extent that the accountant possesses documents which would not be privileged in the hands of the client, the privilege does not protect them from disclosure.") (emphasis added).

**The Subpoena Is Not Duplicative**

HKW argues the subpoena is duplicative of requests served on Defendants, but Defendants produced only *one* document that mentions HKW.  (Herrera Decl. ¶ 6)  And the subpoena seeks documents that cannot be obtained from Defendants—namely, documents disclosing *HKW's* knowledge of the nature and risks of Defendants' business and *HKW's* independent due diligence.  The *possibility* of duplicativeness does not create an undue burden.

**Definitions**

HKW hinges part of its burden claim on the subpoena definitions for "communication" and "document," but the Local Rules make it clear that its definitions are "deemed incorporated by reference into all discovery requests."   Local Rule 26.3(c)(1)-(2).   Rather than file this motion, HKW should have merely applied the definitions in the Local Rules.

**Expense**

Expense is a red herring as Alcon *agreed* it would reimburse HKW for the reasonable expense of compliance.  (Herrera Decl. ¶ 4.)  Expense is not grounds to quash the subpoena.

**Confidential and Privileged Documents**

Alcon does *not* seek HKW's trade secrets or "confidential research, development, or commercial information" about HKW's business.  Alcon invites HKW to raise any such issues if they arise with respect to specific documents, but HKW has not done so.  (Herrera Decl. ¶ 5.)  In any event, there is a protective order in place that will protect confidential information produced by HKW, and this objection is not a reason to quash the subpoena in any event.[7]

---

[7] HKW's refrain about the need to protect third-party confidentiality obligations in agreements is another red herring because the discovery is focused on HKW's acquisition of *Defendants*.  HKW should be able to retrieve, review, and produce documents related to that specific transaction by searching for the project name assigned to it.  Nothing that HKW submits in its motion suggest otherwise.

### C.   HKW'S REFERENCE TO ALCON'S DECISION NOT TO ENFORCE A SUBPOENA SERVED ON HKW IN ANOTHER CASE IS PERPLEXING

As HKW notes, Alcon elected *not* to pursue a subpoena against HKW in the Florida Litigation.  (Mot. at 3.)  Further, as HKW *admits*, "Alcon's claims in the Florida Litigation are separate and distinct from those in [this action], and relate to different products and theories of alleged liability."  (*Id.*)  What HKW does not make clear is that the Florida court granted Defendants' protective order only to the extent it limited the subpoena to one product—consistent with a prior global ruling limiting *all* discovery to that one product.  (Protective Order, *Alcon v. AVG*, No. 18-cv-61638 (S.D. Fla. Jan. 9, 2019), ECF No. 117.)  After the Florida court granted Alcon's motion to dismiss Defendants' original counterclaims, Alcon elected not to enforce the subpoena previously served on HKW *because it determined it was not necessary to the remaining claims and defenses in that action.*  (Taylor Decl. ¶ 9; Letter to Judge, *Alcon v. AVG*, No. 19-mc-00078 (S.D.N.Y. Mar. 1, 2019), ECF No. 18.)  Alcon's decision there has no relevance here.  This is a different case, in a different jurisdiction, involving different claims, defenses, and products.  And importantly, the Florida court did *not* grant Defendants' protective order due to burden, nor could it.  *See Nova Prods., Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004) ("a party ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right").

## V.   REQUEST FOR HEARING

To the extent it would assist the Court, Alcon requests a hearing on HKW's motion.

## CONCLUSION

For the foregoing reasons, Alcon respectfully requests that the Court deny HKW's motion.

Dated: August 26, 2019

By: /s/ Jennifer Lee Taylor

Jennifer Lee Taylor (*pro hac vice* forthcoming)
Sabrina A. Larson (*pro hac vice* forthcoming)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
JTaylor@mofo.com
SLarson@mofo.com

Jamie A. Levitt
Sarah L. Prutzman
Janie C. Buckley
MORRISON & FOERSTER LLP
250 W 55th St.
New York, NY  10019-9601
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
JLevitt@mofo.com
SPrutzman@mofo.com
JBuckley@mofo.com

*Attorneys for Plaintiff*
ALCON VISION LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2019 the foregoing document was electronically filed and served on all counsel of record via CM/ECF.


  /s/ Letty Camarillo